IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CRIMINAL ACTION NO. 12-369 |
| | : | |
| VICTOR BURGOS-BENITEZ | : | |
| | : | |

**ORDER**

In the press of Court business, there are times when things do not proceed with precision. As will be seen, this case presents one such example. By order dated July 30, 2012, this Court accepted the transfer of jurisdiction for the supervised release of Defendant, Victor Burgos-Benitez from the United States District Court for the District of Puerto Rico. Mr. Burgos-Benitez came under the supervision of Matthew Wilson of the United States Probation Office for this District.

On September 23, 2013, Mr. Wilson submitted to the Court a report stating that Defendant had been arrested by the Philadelphia Police Department on September 6, 2013, and charged with assaulting his girlfriend.[1] According to the report, Mr. Wilson interviewed Mr. Burgos-Benitez, who admitted the fact of the arrest, but contended that he and his girlfriend began to argue because he suspected she was using drugs, and that his girlfriend grabbed the wheel of the car Mr. Burgos-Benitez was driving at the time and attempted to drive them off the road; Mr. Burgos-Benitez stated that he struck his girlfriend while trying to gain control of the car. Mr. Wilson reported that he had been unable to contact the complainant to corroborate these

---

[1] Crim. Action No. 12-369, Court Ex. 2 at 4-5 [Doc. No. 11]. As is standard practice, the report of the Probation Officer was not filed on the docket at that time. It was made part of the Court record at the hearing held on January 29, 2015.

facts despite multiple attempts.  The Probation Officer recommended that the Court reserve action until the resolution of the local charges, a recommendation the Court adopted.

On May 30, 2014, Mr. Wilson sent a memorandum to the Court stating that on November 21, 2013, the charges in state court were withdrawn by the prosecution after the complaining witness failed to appear for the second time.[2]  That memorandum requested that no violative action be taken against Defendant.  Upon receipt of this memorandum, the Court requested on June 4, 2014, that Mr. Wilson inquire as to the position of the Office of the United States Attorney.  On June 12, 2014, Mr. Wilson reported to the Court that he had spoken with Assistant United States Attorney Karen Marston, who wanted to investigate the incident and determine whether to pursue a violation hearing.[3]  A month later, on July 11, 2014, Mr. Wilson presented to this Court a petition for revocation action that requested the issuance of a summons directing Defendant to appear at a revocation hearing.[4]  In response, the Court spoke by telephone with Mr. Wilson and then sought to arrange a telephone conference with counsel.  Because Mr. Benitez-Burgos had no assigned counsel in this District, and Ms. Marston had not entered an appearance for the government, this conference was deferred.[5]  By order dated July 20, 2014, the Court appointed the Defender Association of Philadelphia, Federal Court Division, to represent Mr. Burgos-Benitez.[6]  On August 8, 2014, Assistant Federal Defender Joseph Miller entered his

---

[2] Crim. Action No. 12-369, Court Ex. 2 at 2. [Doc. No. 11].  Again, according to standard practice, this report was not docketed at the time.

[3] Crim. Action No. 12-369, Court Ex. 2 at 1 [Doc. No. 11].  Once again, according to standard practice, this memorandum was not docketed at the time.

[4] Crim. Action No. 12-369, Court Ex. 3.

[5] The Court notes that the Assistant United States Attorney did not formally enter her appearance until January 29, 2015.

[6] Crim. Action No. 12-369 [Doc. No. 4].

appearance for Defendant.[7] On September 15, 2014, Assistant Federal Defender Maranna Meehan entered her appearance for Defendant, and Mr. Miller withdrew as counsel.[8]

During this time, the Court, through the Deputy Clerk, made numerous attempts to arrange a teleconference with counsel and then to schedule a hearing.[9] The Court attempted to arrange telephone conferences on August 12 or August 13, 2014, but Mr. Miller was not available that week. The Court then attempted to schedule a telephone conference for August 18 or August 20, 2014, but Ms. Marston was unavailable from August 18, 2014, through Labor Day. Efforts then shifted to scheduling a hearing. The Court proposed numerous dates between September 24 and October 2, 2014, but a hearing at that time was not possible because Ms. Meehan, who had recently entered an appearance in the case, requested time to receive and review discovery. It was not until October 22, 2014, that Ms. Meehan and Ms. Marston inquired as to the possibility of scheduling the hearing. Because of the Court's trial and hearing schedule, the next attempt to schedule the hearing occurred on January 7, 2015, when the Court proposed hearing dates of January 15, January 20, January 21, January 28, and January 29, 2015. On January 8, 2015, the Court issued a notice directing Defendant to appear for a hearing on January 29, 2015, on the charged violation of supervised release.[10] Neither the Assistant United States Attorney nor the Probation Officer notified the Court that Defendant's term of supervised release was set to end on January 21, 2015. On January 28, 2015, counsel for Defendant filed a motion

---

[7] Crim. Action No. 12-369 [Doc. No. 5].

[8] Crim. Action No. 12-369 [Doc. No. 6].

[9] Crim. Action No. 12-369, Court Ex. 1 [Doc. No. 10]. All of the dates in the discussion that follows are taken from the email record in this Exhibit.

[10] Crim. Action No. 12-369 [Doc. No. 7].

to dismiss the petition for violation of supervised release because no summons or warrant was issued before the end of the period of supervised release.[11]

On January 29, 2015, the Court held a hearing with counsel, Defendant, and the Probation Officer present. The Court first heard argument relating to the motion to dismiss, which the government opposed. The procedural history as set forth above was established. It was also established that although everyone in the case proceeded as if the order attached to the July 11, 2014 petition, directing the issuance of the summons had been signed, the Court had not in fact actually signed the order and the petition therefore had not been docketed of record.[12] The Court determined that dismissal of the petition was not warranted, and that the appropriate course of action was to sign the order directing the issuance of the summons *nunc pro tunc* to January 8, 2015, the date on which the notice of hearing issued.[13] The Court now explains the basis for that ruling.

Under federal law, a court may revoke a term of supervised release after expiration of the term in certain circumstances. The relevant statute provides as follows:

> **Delayed Revocation**.— The power of the court to revoke a term of supervised release for violation of a condition of supervised release, and to order the defendant to serve a term of imprisonment and, subject to the limitations in subsection (h), a further term of supervised release, extends beyond the expiration of the term of supervised release for any period reasonably necessary for the adjudication of matters arising before its expiration if, before its expiration, a warrant or summons has been issued on the basis of an allegation of such a violation.[14]

---

[11] Crim. Action No. 12-369 [Doc. No. 8].

[12] Once the Court signs an order for issuance of a summons, the petition and order are docketed of record.

[13] Crim. Action No. 12-369 [Doc. No. 15].

[14] 18 U.S.C. § 3583(i).

4

Defendant argues that because no warrant or summons issued before the expiration of the term of supervised release, the Court is without power to revoke the term of supervised release.[15] Defendant made no argument with regard to the order attached to the petition not having been signed because until the hearing, or just before, all concerned parties shared the belief that the order attached to the petition had been signed by the Court.  In fact, the motion to dismiss refers to the "signed petition of July 11, 2014."[16]  Defendant argues in the motion that the thought-to-have-been-signed order did not issue a summons, but instead only directed the issuance of the summons, and therefore the Court lacks jurisdiction because no summons was issued before the expiration of the term of supervised release.

Contrary to Defendant's argument, had the Court signed the order attached to the petition in July, as everyone involved understood to have occurred, then the January 8, 2015 notice constituted a "summons" pursuant to 18 U.S.C. § 3583(i).  A "summons is generally understood to be the process for requiring a defendant to appear and answer in an action.  Section 3583(i) prescribes no particular requirements for the issuance of a summons except to require that it be issued on the basis of an allegation of [a supervised release] violation."[17]  Moreover, "a summons

---

[15] The government argues that the period for issuance of the summons can be equitably tolled, and should be in this case.  *See United States v. Merlino*, No. 99cr363, 2014 WL 5364825 (E.D. Pa. Oct. 20, 2014) (Surrick, J.).  The Court holds that even if equitable tolling is warranted under some circumstances, it is not appropriately applied here.  Although a portion of the delay in scheduling the hearing may be attributed to defense counsel's request for documents, the request was reasonable, and the documents were provided in a timely manner, and thus even if that period were equitably tolled, it would not make any practical difference.

[16] Crim. Action No. 12-369  [Doc. No. 8 at 11-12].

[17] *United States v. Bunn*, 542 F. App'x 50, 51 (2d Cir. 2013)  (citations and internal quotation marks omitted).  The Court finds this ruling by an appellate court more persuasive than the district court decisions cited by Defendant.

on a petition to revoke supervised release is valid to extend jurisdiction under 18 U.S.C. § 3583(i) when it is signed and issued by a clerk at the direction of a judge." [18]

There is no dispute that the notice of hearing "was issued on the basis of detailed allegations by a United States Probation officer that [Defendant] had violated his supervision,"[19] or that Mr. Burgos-Benitez and his counsel were fully aware of the nature of those detailed allegations. The notice was issued by the Deputy Clerk, acting in her official capacity as the "Deputy Clerk to Judge Rufe," and set forth the date, time, and place at which Defendant had to appear. The notice therefore effected the summons.[20] In summary, although as the Court noted at the hearing, there was a "technical glitch" in that the order for issuance of a summons inadvertently had not been signed, the Court, the Probation Department, Defendant, his attorney, and the Assistant United States Attorney all proceeded on the understanding that Defendant was to face a hearing on a charged violation of the conditions of his supervised release, and everyone prepared for that hearing. Because there is no prejudice to Defendant, the Court determined that it was appropriate to sign and date the order attached to the petition that directing the issuance of the summons *nunc pro tunc*[21] to January 8, 2015, the date of the notice directing defendant to appear at the hearing on January 29, 2015. Under the unusual circumstances of this case, the

---

[18] *United States v. Vallee*, 677 F.3d 1263, 1265 (9th Cir. 2012) (citing *United States v. Hondras*, 296 F.3d 601, 602-03 (7th Cir. 2002)).

[19] *Bunn*, 542 F. App'x at 51.

[20] *Id.* at 52. The issuance of the notice thereby distinguishes this case from the Second Circuit's decision in *United States v. Janvier*, 599 F.3d 264 (2d Cir. 2010), where neither a warrant nor a summons issued before the expiration of the term of supervised release.

[21] *Nunc pro tunc*, which is a Latin phrase meaning "now for then," is defined as "[h]aving retroactive legal effect through a court's inherent power <the court entered a *nunc pro tunc* order to correct a clerical error in the record>." Black's Law Dictionary 1174 (9th ed. 2009). "When an order is signed '*nunc pro tunc*' as of a specified date, it means that a thing is now done which should have been done on the specified date." *Id.* (quoting 35 C.J.S. Federal Civil Procedure § 370, at 556 (1960)).

signing of the order *nunc pro tunc* simply formalized the unanimous understanding as to the status of the case.[22]

**AND NOW**, this 6th day of February 2015, upon consideration of Defendant's Motion to Dismiss the Petition for Violation of Supervised Release [Doc. No. 8], the response thereto, and for the reasons stated at the hearing on January 29, 2015, and in this order, it is hereby **ORDERED** that the Motion is **DENIED**.

It is so **ORDERED**.

                                            **BY THE COURT:**

                                            /s/Cynthia M. Rufe

                                            _____
                                            **CYNTHIA M. RUFE, J.**

---

[22] The Second Circuit in *Bunn* also rejected an argument that Section 3583(i) jurisdiction requires that the summons be docketed. *Bunn*, 542 F. App'x at 53. Thus, the fact that the order was signed *nunc pro tunc* and docketed after the hearing did not deprive the Court of jurisdiction.